UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NOS. 23-cv-24167-ALTMAN
22-cr-20556-ALTMAN-2

**KAREN XIOMARA WILLIAMS**,

*Movant*,

v.

**UNITED STATES OF AMERICA**,

*Respondent.*
_____/

## ORDER

The Movant, Karen Xiomara Williams, is a federal prisoner serving a 168-month prison sentence for conspiring to commit a Hobbs Act robbery. *See* Judgment, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. July 31, 2023), ECF No. 154. Williams has now filed a motion under 28 U.S.C. § 2255 to vacate that conviction and sentence. *See* Motion to Vacate [ECF No. 1]. Rule 4(b) of the Rules Governing Section 2255 Cases authorizes us to summarily deny a § 2255 motion, even without a response from the Government, "if it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (cleaned up); *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face[.]"). After careful review, we **DENY** the Motion.

### THE FACTS

On November 16, 2022, a federal grand jury in our District indicted Williams (and five other codefendants) on one count of conspiracy to commit a Hobbs Act robbery between May 22, 2016, and December 11, 2017. *See* Indictment, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D.

Fla. Nov. 17, 2022), ECF No. 3 at 1–2. On March 29, 2023, Williams executed a factual proffer in which she admitted to the following conduct:

> Beginning in or around 2016 and continuing into in or around 2017, the defendant [and her codefendants], conspired with "John Doe" ("Doe"), a resident of Orange County, California, and other persons, to possess with intent to distribute marijuana. Doe supplied marijuana and a marijuana product known as "moon rock" to the [Defendants].
>
> [. . . .]
>
> In or around November 2017, the defendant and [codefendant] Farley were residing together in an apartment on Collins Avenue, in the City of Miami Beach, Florida (the "Collins Avenue apartment"). The defendant met with [the codefendants] at the Collins Avenue apartment where they planned to rob Doe of marijuana, moon rock, money, and other valuables at Doe's residence in Orange County, California. Among other things, Farley, the defendant, and [codefendant] Flood decided that the robbery team, which would include the defendant and Flood, would travel to Southern California by car. . . . Further, Farley recruited [the remaining codefendants] to participate in the robbery.
>
> [. . . .]
>
> On or about December 5, 2017, late in the evening, the defendant, Flood, [and the other coconspirators], drove to John Doe's residence in Orange County. . . . Flood went to the front door and rang the doorbell and/or knocked. John Doe opened the door and observed Flood alone at his front door. Flood told Doe she had the money for the moon rocks in her car and started walking back towards the driveway. Doe closed the door and had just turned away from the door when [the male coconspirators] burst through the door. All four males were carrying firearms. One of them put a gun to Doe's head and told him not to make any noise.
>
> Upon entering John Doe's house, [the four male robbers] used zip ties to tie Doe's hands and feet, and they put duct tape over Doe's mouth. They put Doe in his den and went to the bedroom where Doe's wife ("Jane Doe") was sleeping. They pulled Jane Doe out of bed, brought her to the den, zip-tied her hands and feet, and put duct tape over her mouth. The male robbers then ransacked the house. The four males found and stole moon rock, marijuana, marijuana embedded in wax ("shatter"), approximately $3,500 in cash, Jane Doe's jewelry, John Doe's watches, and the couple's cell phones. The value of the stolen narcotics was approximately $91,000; and the jewelry, [sic] and watches were worth approximately $29,500.
>
> [. . . .]
>
> The four male robbers used totes and bags they found in the Does' house to carry the stolen items out of the house. Doe heard a woman (the defendant or Flood) telling the male robbers how to load the stolen items into a vehicle.

> Following the robbery, the defendant [and the other coconspirators] packaged the stolen marijuana, moon rock, and shatter, for transport to Florida. On December 7, 2017, the group began driving back to Florida in the SUV. On December 11, 2017, the group arrived at the Collins Avenue apartment where they delivered the drugs and other items stolen from the Does' residence to Farley.

Factual Proffer, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Mar. 29, 2023), ECF No. 78 at 1–4.

That same day (March 29, 2023), Williams appeared before U.S. Magistrate Judge Lisette M. Reid for a change-of-plea hearing. Williams did not have a "written plea agreement" with the Government and, instead, voluntarily entered an "open plea" on the sole count of the Indictment. Report and Recommendation on Change of Plea, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Mar. 30, 2023), ECF No. 80 at 2; *see also* Sentencing Hr'g Tr., *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Sept. 15, 2023), ECF No. 174 at 18–19 ("[Defense Counsel]: [B]efore I can say a word, [Williams] says, 'I did it.' And she says, 'I don't want to wait, I don't want a plea agreement, I don't want to cooperate.' . . . And you'll notice we schedule[d] our change of plea like immediately. I had barely gotten the discovery.").

During the change-of-plea hearing, Magistrate Judge Reid found that Williams "assented to the accuracy of the [factual] proffer and acknowledged her participation in the offense," that she understood "the possible minimum and maximum penalties for the charged offense," and that she "had reviewed the Indictment, discussed the charge against her with her attorney, and was satisfied with the legal representation she received, and had a full opportunity to discuss the facts of the case with her attorney." Report and Recommendation on Change of Plea, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Mar. 30, 2023), ECF No. 80 at 2–3. Magistrate Judge Reid then concluded that Williams had "freely and voluntarily pleaded guilty as to Count I of the Indictment," and she recommended that we accept Williams's guilty plea. *Id.* at 3. When Williams didn't object to Magistrate Judge Reid's Report and Recommendation, *see* Defendant's Notice of Non-Objection,

*United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Apr. 4, 2023), ECF No. 83 at 1, we adopted the Report and accepted the guilty plea, *see* Paperless Order Adopting Report and Recommendation, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Apr. 4, 2023), ECF No. 84.

At Williams's sentencing on July 31, 2023, we sentenced Williams (as to Count 1) to 168 months in the custody of the Bureau of Prisons. *See* Judgment, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. July 31, 2023), ECF No. 154 at 2. Williams initially appealed her conviction and sentence to the Eleventh Circuit. *See* Notice of Appeal, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Aug. 14, 2023), ECF No. 167. But, on October 13, 2023, she voluntarily dismissed her appeal. *See* Order Voluntarily Dismissing Appeal, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Oct. 13, 2023), ECF No. 180 at 2. Williams timely filed this Motion on October 26, 2023.[1] *See* Motion at 13; *see also Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) ("Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it.").

---

[1] A § 2255 motion to vacate must be filed within one year of "the date on which the judgment of conviction becomes final[.]" 28 U.S.C. § 2255(f)(1). "The Eleventh Circuit has not addressed the issue of when a conviction becomes final after a direct appeal is voluntarily dismissed." *Manders v. United States*, 2012 WL 72737, at *1 (M.D. Fla. Jan. 10, 2012) (Presnell, J.). Some district courts in our Circuit have said that "the judgment is deemed final 90 days after the [voluntary] dismissal of that appeal." *Ibid.*; *see also, e.g., Baskin v. United States*, 2011 WL 794821, at *1 (M.D. Fla. Mar. 1, 2011) (Bucklew, J.) ("[W]hen a defendant files an appeal, but then voluntarily dismisses it, the judgment is deemed final 90 days after the dismissal of that appeal."). Others have held, albeit only in the context of § 2254 habeas petitions, that a criminal judgment "be[comes] final 'when [the defendant] voluntarily dismisse[s] his direct appeal.'" *Westmoreland v. Hetzell*, 840 F. Supp. 2d 1275, 1279 (N.D. Ala. 2011) (Blackburn, C.J.) (quoting *Mitchell v. Att'y Gen., Fla.*, 2008 WL 2385064, at *1 (M.D. Fla. June 9, 2008) (Moody, J.)); *but cf. Mendoza v. United States*, 2020 WL 7872155, at *7 (S.D. Fla. Dec. 14, 2020) (Brannon, Mag. J.) (distinguishing *Westmoreland* since § 2254's "exhaustion requirement[s]" are "substantively different than the requirements of 28 U.S.C. § 2255"), *report and recommendation adopted*, 2021 WL 24711 (S.D. Fla. Jan. 4, 2021) (Middlebrooks, J.). Since Williams filed her Motion only thirteen days after she dismissed her appeal, it is timely under either formulation.

## THE LAW

### I. Motions to Vacate Under 28 U.S.C. § 2255

Because collateral review isn't a substitute for a direct appeal, a movant can proceed under § 2255 only in extremely limited circumstances. As relevant here, a prisoner is entitled to relief under § 2255 if (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence is "otherwise subject to collateral attack." § 2255(a); *accord McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). In other words, "relief under § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (cleaned up); *see also United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge will not do service for an appeal."). If a court grants a § 2255 claim, the court "shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." § 2255(b). The movant bears the burden of proving his § 2255 claim. *See Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) ("We rest our conclusion that a § 2255 movant must prove his [claim] on a long line of authority holding that a § 2255 movant bears the burden to prove the claims in his § 2255 motion." (cleaned up)), *cert. denied*, 139 S. Ct. 1168 (2019).

### II. Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S.

5

668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial," counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. If the defendant pleads guilty, the prejudice prong is modified so that the defendant must instead show "that there is a reasonable probability, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## ANALYSIS

Although Williams lists *four* grounds for relief in her Motion, she's actually asserting *five* different claims: (1) that her counsel was ineffective because he "never notified Movant of [the] Indictment," Motion at 4; (2) that her conviction violates the Double Jeopardy Clause because she was charged for the "[s]ame offense and conduct out of the First Indictment," *id.* at 5; (3) that this District is an improper venue for the case because "the crime took place in California," *id.* at 7; (4) that her due-process rights were violated because she "was not notified of [the] Indictment," *id.* at 8; and (5) that the "statute of limitations ran out" before the Government charged her, *id.* at 10. These five claims are meritless and must be summarily denied.[2]

### I.     Grounds One and Four: Notice

The record is clear that Williams *was* aware of the Indictment and that counsel discussed its contents with her. In fact, on *two* different occasions, judges in our District confirmed that Williams had been shown the Indictment.[3] *First*, during her change-of-plea hearing on March 29, 2023, Williams told Magistrate Judge Reid—under oath and in open court—that "she *had reviewed the Indictment*, discussed the charge against her with her attorney, and was satisfied with the legal representation she received, and had a full opportunity to discuss the facts of the case with her attorney." Report and Recommendation on Change of Plea, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D.

---

[2] We recognize that most of Williams's claims are (probably) also procedurally defaulted because they were never adjudicated on direct appeal. *See Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding."). We won't dwell on this procedural deficiency, though, because the Petition can be summarily denied on its merits. *See Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) ("When relief is due to be denied even if claims are not procedurally barred, we can skip over the procedural bar issues, and we have done so in the past.").

[3] Williams *also* had the opportunity to review the Indictment on February 17, 2023, when she was arraigned. *See* Court Minutes, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Feb. 22, 2023), ECF No. 53 at 1 ("Defendant Arraigned"). Although a transcript of the arraignment isn't available, Magistrate Judge Lauren Louis was required, at that hearing, to ensure that "the defendant has a copy of the indictment or information" during the hearing. FED. R. CRIM. P. 10(a)(1).

Fla. Mar. 30, 2023), ECF No. 80 at 3 (emphasis added). *Second*, at the sentencing on July 31, 2023, we told Williams that we had reviewed several documents before her sentencing hearing; one of these was the Indictment. *See* Sentencing Hr'g Tr., *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Sept. 15, 2023), ECF No. 174 at 3 ("The Court: First of all, I've reviewed the indictment in the case. That's the written charge the United States has brought against you."). We then asked Williams whether she "had a chance to review those documents"—*i.e.*, the Indictment and the other documents—"together with your lawyer, prior to the hearing?" *Id.* at 4. Williams answered unequivocally: "Yes." *Ibid.*

As the Supreme Court has explained, "the representations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Williams has confirmed, on no less than two occasions, that she'd reviewed the Indictment with her lawyer. *See* Report and Recommendation on Change of Plea, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Mar. 30, 2023), ECF No. 80 at 3; Sentencing Hr'g Tr., *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Sept. 15, 2023), ECF No. 174 at 4. Williams cannot now "ask us to ignore [her] repeated assurances—given under oath—that [she] had plenty of discussions with [her] lawyer" about the Indictment. *Lopez v. United States*, 2023 WL 4186414, at *8 (S.D. Fla. June 26, 2023) (Altman, J.) (citing *Blackledge*, 431 U.S. at 74). Because the record conclusively refutes Williams's claims that she "was not notified of [the] Indictment," and that her attorney failed to discuss the Indictment with her, Motion at 4, 8, we **DENY** Grounds One and Four.

## II.     Ground Two: Double Jeopardy

We also reject Williams's claim that her conviction violated the Double Jeopardy Clause. "The double jeopardy clause of the Fifth Amendment . . . protects 'against a second prosecution for the same offense after acquittal. It protects a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *United States v. Bonilla*, 579 F.3d 1233, 1240 (11th Cir. 2009) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). Williams gives us no details about her double-jeopardy argument other than to say that the Government charged her with the "[s]ame offense and conduct out of the First Indictment." Motion at 5 (errors in original). There was only one indictment in this case, and it only charged Williams with one count (conspiracy to commit Hobbs Act robbery). *See* Indictment, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Nov. 17, 2022), ECF No. 3 at 1–2. There's thus nothing about *this* Indictment that violated Williams's double-jeopardy rights. *Cf. United States v. Jones*, 601 F.3d 1247, 1258 (11th Cir. 2010) ("[A] multiplicitous indictment violates double jeopardy principles by giving the jury *more than one opportunity* to convict the defendant for the same offense." (emphasis added)).

Instead, we'll assume[4] that the mysterious "First Indictment" Williams is referring to is the "Superseding Information" the Government filed in an earlier case before Judge Kathleen M. Williams (the "Judge Williams Case"). *See* Superseding Information, *United States v. Williams*, No. 19-CR-20667-WILLIAMS-2 (S.D. Fla. July 15, 2021), ECF No. 306 at 1–5 (the "Superseding Information").[5] The

---

[4] We "assume" because Williams says only this about her double-jeopardy claim: "Double Jeopardy (Same Offense and Conduct) out of the First Indictment." Motion at 5 (errors in original). That's it. "We've taken our best shot at deciphering [this ground], but we aren't going to bend over backwards to figure out every possible argument [Williams] could be making in this vague and conclusory claim. It was, after all, her burden to 'establish [her] right to habeas relief and [to] provide all facts necessary to show a constitutional violation[.]'" *Catoggio v. United States*, 2023 WL 4156692, at *3 n.1 (S.D. Fla. June 23, 2023) (Altman, J.) (quoting *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008)).

[5] Although Williams refers to the charging document in the Judge Williams Case as an "Indictment," she waived her "right to prosecution by Indictment" in that case two days after the Government filed the Superseding Information. *See* Waiver of Indictment, *United States v. Williams*, No. 19-CR-20667-WILLIAMS-2 (S.D. Fla. July 15, 2021), ECF No. 308.

9

Superseding Information charged Williams with conspiracy to possess with intent to distribute several controlled substances (namely eutylone, MDMA, and marijuana); conspiracy to commit access device fraud; and aggravated identity theft. *See ibid.* Williams pled guilty to all three of those offenses and was sentenced by Judge Williams to 62 months in prison. *See* Judgment, *United States v. Williams*, No. 19-CR-20667-WILLIAMS-2 (S.D. Fla. Oct. 1, 2021), ECF No. 329 at 2.

Under the "same elements" test the Supreme Court set out in *Blockburger v. United States*, 284 U.S. 299 (1932), "two offenses are different for the purposes of double jeopardy analysis if each 'requires proof of an additional fact which the other does not,'" *Cole v. U.S. Dep't of Agric.*, 133 F.3d 803, 805 (11th Cir. 1998) (quoting *Blockburger*, 284 U.S. at 304). Williams has failed to show a double-jeopardy violation here because the Superseding Information in the Judge Williams Case and the Indictment in our case charged her with totally different crimes. In our case, Williams was charged with conspiracy to commit a Hobbs Act robbery—a charge that arises from her conspiracy to travel to California to rob John Doe of his drugs and other valuables. *See* Factual Proffer, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Mar. 29, 2023), ECF No. 78 at 1–4. In the Judge Williams Case, by contrast, Williams admitted to making "money transfers . . . to acquire additional drugs," smuggling drugs into state and federal prisons in Florida, and using the personal identification information of approximately 23 individuals to submit fraudulent "IRS tax documents." *See* Factual Proffer, *United States v. Williams*, No. 19-CR-20667-WILLIAMS-2 (S.D. Fla. July 16, 2021), ECF No. 316 at 2–4.

Needless to say, none of the conduct in the Judge Williams Case (*i.e.*, distributing controlled substances and filling out fraudulent tax returns) has *anything* to do with conspiring to rob John Doe—even if the object of that robbery happened to be controlled substances. *See In re Gomez*, 830 F.3d 1225, 1227 (11th Cir. 2016) ("Of course, conspiracy to commit Hobbs Act robbery, attempted Hobbs Act robbery, and possession with intent to distribute are separate and distinct offenses."); *see also United*

*States v. Cannon*, 987 F.3d 924, 940 (11th Cir. 2021) (holding that "conspiracy to commit Hobbs Act robbery" and "conspiracy to possess with intent to distribute cocaine" have "separate elements" that satisfy the *Blockburger* test *even if* the conspiracies "stem[med] from a single agreement"). Because the Indictment in our case and the Superseding Information in the Judge Williams Case didn't charge Williams with the same "offense and conduct," we **DENY** Ground Two.[6]

### III.    Ground Three: Improper Venue

Williams's venue claim fares no better. Williams says that our District wasn't the proper venue for her case because "the crime took place in California" and "[t]he robberies were not related to the Southern District of Florida." Motion at 7. Again, we disagree. "The Constitution, the Sixth Amendment, and Rule 18 of the Federal Rules of Criminal Procedure guarantee defendants the right to be tried in the district in which the crime was committed." *United States v. Breitweiser*, 357 F.3d 1249, 1253 (11th Cir. 2004). "In a conspiracy case, venue is proper in *any district where an overt act was committed in furtherance of the conspiracy*." *United States v. Smith*, 918 F.2d 1551, 1557 (11th Cir. 1990) (emphasis added) (citing *Hyde v. United States*, 225 U.S. 347, 363 (1912)). Williams admitted in her factual proffer that the conspiracy began—in other words, that the conspirators hatched their plan to rob John Doe—at Codefendant Farley's "apartment on Collins Avenue, in the City of Miami Beach, Florida."[7] Factual Proffer, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Mar. 29, 2023), ECF No. 78 at 2. And, after Williams and her codefendants committed the robbery, they returned to the very same Miami Beach apartment, "where they delivered the drugs and other items stolen from the Does' residence to Farley." *Id.* at 4. Because the conspiracy to rob John Doe was formed in the

---

[6] In a separate part of her Motion, Williams appears to argue that her sentence in this case should have run concurrently with the sentence in the Judge Williams Case "because it was the same Offense and Conduct out of the Same Indictment." Motion at 3. Even if we were willing to construe this throwaway line as a new (sixth) ground for relief, we'd **DENY** it too because—for the reasons we just explained—Williams wasn't prosecuted for the same conduct twice.
[7] Miami Beach is a city within Miami-Dade County, Florida—which, of course, is part of the Southern District of Florida. *See* 28 U.S.C. § 89(c).

Southern District of Florida (and because the conspiracy was completed in the Southern District of Florida), this District was a proper venue for the conspiracy charge—even if the substantive robbery occurred in California. *See United States v. Matthews*, 168 F.3d 1234, 1246 (11th Cir. 1999) ("Moreover, the fact that a majority of a conspiracy's activity took place in a venue other than the one where the trial takes place does not destroy venue."); *see also United States v. Strickland*, 493 F.2d 182, 187 (5th Cir. 1974) ("[V]enue in a conspiracy case may be laid in the district where the conspiracy was formed, as well as in any district where an overt act in furtherance of the conspiracy took place.").[8] We therefore **DENY** Ground Three.

### IV.     Ground Five: Statute of Limitations

Finally, Williams alleges that the "statute of limitations ran out" before the Government charged her with Hobbs Act conspiracy. Motion at 10. Subject to limited exceptions not applicable here, Congress created a five-year statute of limitations for non-capital federal offenses. *See* 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."); *see also, e.g., United States v. Hano*, 922 F.3d 1272, 1282–83 (11th Cir. 2019) (applying § 3282(a) to convictions "for Hobbs Act robbery and conspiracy to commit Hobbs Act robbery"). Where, as here,[9] a conspiracy conviction does not require an overt act, "the indictment satisfies the requirements of the statute of limitations if the conspiracy is alleged to have *continued into the limitations period*." *United States v. McNair*, 605 F.3d 1152,

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[9] "[We] now decide that the government is not required to allege and prove an overt act in a prosecution for conspiracy to obstruct commerce in violation of 18 U.S.C. § 1951." *United States v. Pistone*, 177 F.3d 957, 960 (11th Cir. 1999).

1213 (11th Cir. 2010) (emphasis added) (quoting *United States v. Gonzalez*, 921 F.2d 1530, 1548 (11th Cir. 1991)).

Williams was indicted on November 16, 2022. *See* Indictment, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Nov. 17, 2022), ECF No. 3 at 1. So, for the prosecution to comply with the statute of limitations, the conspiracy had to continue past November 16, 2017. *See McNair*, 605 F.3d at 1213. The Indictment alleges that the Hobbs Act conspiracy continued until *December 11, 2017*. *See* Indictment, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Nov. 17, 2022), ECF No. 3 at 1. And Williams has *conceded* that the conspiracy *in fact* continued past November 16, 2017. In her Factual Proffer, for instance, she admitted that she and her codefendants "began driving from Florida to Los Angeles" on November 30, 2017, that John Doe was robbed on December 5, 2017, and that she and her codefendants returned to South Florida with the stolen items on December 11, 2017. *See* Factual Proffer, *United States v. Williams*, No. 22-CR-20556-ALTMAN-2 (S.D. Fla. Mar. 29, 2023), ECF No. 78 at 2–4. Because the Indictment accurately alleges that the conspiracy continued until December 11, 2017, the five-year statute of limitations hadn't expired when Williams was indicted on November 16, 2022. We therefore **DENY** Ground Five.

### EVIDENTIARY HEARING

Because Williams's § 2255 motion fails as a matter of law—and since her claims are plainly refuted by the record—we see no need to hold an evidentiary hearing in this case. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Jurists of reason wouldn't debate our assessment of Williams's constitutional claims, so we won't issue a COA here.

* * *

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Motion [ECF No. 1] is **DENIED**. A COA is **DENIED**. Any other pending motions, including any requests for an evidentiary hearing, are **DENIED**. All deadlines are **TERMINATED**. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on November 9, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Karen Xiomara Williams, *pro se*